## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| DAVID BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| | ) |
| HARTFORD LIFE AND | ) |
| ACCIDENT INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW Plaintiff, David Brown, and for his claims and causes of action against

Defendant, Hartford Life and Accident Insurance Company, states as follows:

### PARTIES

1.     David Brown ("Brown") is a resident and citizen of the State of Missouri.

2.     Defendant The Hartford Life and Accident Insurance Company ("Hartford") is an out-of-

state insurance company authorized to do business in the State of Missouri. The

Commissioner of the Missouri Department of Insurance is authorized to accept service of

process on behalf of Hartford.

### JURISDICTION AND VENUE

3.     Brown brings his claim pursuant to the Employee Retirement Income Security Act

("ERISA") and 29 U.S.C. § 1001 *et seq.*

4.     This dispute is governed by a welfare benefits plan and its policy documents, as well as

applicable federal law regarding employer provided benefits. 29 U.S.C. § 1132(e)(1).

5. This Court also has subject matter jurisdiction pursuant to the general jurisdictional statute for civil actions arising under federal law. 28 U.S.C. § 1331.

6. Venue lies in the Western District of Missouri under 29 U.S.C. § 1332(e)(2), as the breach occurred in this district, and because the welfare benefits plan is administered in this district.

7. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to this action occurred within this judicial district.

<u>INFORMATION REGARDING TRIAL</u>

8. No jury trial is allowed under ERISA law.

<u>STATEMENTS OF FACT</u>

9. Brown worked as a shift-lead Operating Engineer for Children's Mercy Hospital ("CMH"). The duties of his occupation included:

   a. Assists the Operating Engineer III in the operation, inspection, preventive maintenance, and repair of all fixed and non-fixed non-patient equipment, medical gas systems, and HVAC systems in the hospital.

   b. Responsible for carrying out continuous quality improvement efforts.

   c. Assists in developing new procedures, work practices, and data collection, to comply with all City, State, Federal, OSHA, NFPA, and JCAHO codes/requirements.

10. Brown was unable to continue employment due to osteomyelitis, severe peripheral neuropathy, vascular insufficiency, high blood pressure, and diabetic retinopathy. Additionally, Brown has lost all but one of his toes on his left foot.

2

11.     CMH sponsored a group short-term disability ("STD") and long-term disability ("LTD") benefits plan ("Plan") for its participating employees.

12.     The Plan constitutes employee welfare benefit plans as defined by 29 U.S.C. § 1002(1).

13.     The Plan offered disability benefits to qualifying CMH's employee Plan participants.

14.     At all relevant times, Brown has been a participant and covered person under the terms of the Plan.

15.     Hartford is the current administrator of the Plan.

16.     CMH delegated or attempted to delegate the function of issuing STD and LTD claim determinations to Hartford.

17.     CMH and Hartford entered into an administrative services contract through which CMH paid Hartford for acting as claims administrator.

18.     Brown applied for STD benefits with Hartford.

19.     Hartford determined that Brown was eligible for STD benefits due to his disability and paid benefits through exhaustion.

20.     Under the Plan, when an STD claim has been paid through exhaustion, the claim should have been transitioned to an LTD claim.

21.     On or about November 16, 2020, Brown[1] initiated an LTD claim by sending Hartford a Notice of Claim, including a representation authorization, by fax, mail, and e-mail.

22.     On December 4, 2020, Brown sought information from Hartford regarding the status of his claim and was told that the claim needed to be transitioned to LTD. Hartford identified Michelle White ("White") as the claims analyst assigned to Brown's claim.

---

[1] References to Brown refer to Brown or his counsel.

23. On December 10 and 14, 2020, messages were left with Hartford via voicemail asking for the status of the LTD claim.

24. On December 18, 2020, Brown again sought information regarding the status of his claim but was unable to reach a live person.

25. On December 21, 2020, White informed Brown that his claim had been referred to the LTD unit and that someone would be in contact with Brown. Brown responded by seeking confirmation from White that she had received the representation authorization and notice of Brown's claims.

26. On January 11, 2021, Brown attempted to contact White but was advised that she was out of the office.

27. On January 12, 2021, Brown again called to follow up on the status of the claim transition. During the call, Brown was informed that the claim had been transitioned from STD to LTD and that the LTD claim was closed because Hartford claimed it received no response to requests for claim forms.

28. On January 20, 2021, Brown again called to follow up on the status of the claim transition. During the call, Brown was informed that the claim had been transitioned from STD to LTD and that the LTD claim was closed. The reason given for the closure was that Hartford had received no response to requests for claim forms.

29. On January 20, 2021, Brown supplied Hartford with a Representation Authorization, a completed and signed Long Term Disability Income Benefits Questionnaire, a list of medical providers, a completed and signed Retirement/Pension Questionnaire, a completed Function Report, authorizations, and other claim forms.

4

30.     On March 9, 2021, Hartford issued its denial of Brown's LTD claim. Hartford contended

that it had not been supplied sufficient proof showing that Brown met the Plan's

definition of "disability." Hartford did not invoke any exclusions or limitations of the

Plan in explaining its decision.

31.     On August 31, 2021, Brown appealed Hartford's March 9, 2021, denial of LTD benefits,

and supplied additional evidence.

32.     On September 17, 2021, Hartford overturned its March 9, 2021 denial and advised that

Brown's claim would be referred to its Disability Claim Office for further administration.

33.     On October 8, 2021, Hartford's Disability Claim Office denied Brown's claim. Hartford

did not contest that Brown's medical condition rendered him "disabled" under the policy.

Instead, for the first time, Hartford invoked the Pre-existing Condition Limitation and

denied Brown's claim on that basis alone.

34.     The Pre-existing Condition Limitation is defined by the policy as:

> **"Pre-existing Condition Limitation:** *Are benefits limited for Pre-existing Conditions?*
> We will not pay any benefit, or any increase in benefits, under The Participating Employer's coverage
> under The Policy for any Disability that results from, or is caused or contributed to by, a Pre-existing
> Condition, unless, at the time You become Disabled:
>   1) You have not received Medical Care for the condition for 3 consecutive month(s) while
>      insured under The Participating Employer's coverage under The Policy; or
>   2) You have been continuously insured under The Participating Employer's coverage under The
>      Policy for 12 consecutive month(s).
>
> **Pre-existing Condition** means:
>   1) any accidental bodily injury, sickness, Mental Illness, pregnancy, or episode of Substance
>      Abuse; or
>   2) any manifestations, symptoms, findings, or aggravations related to or resulting from such
>      accidental bodily injury, sickness, Mental Illness, pregnancy, or Substance Abuse; for which
>      You received Medical Care during the 3 consecutive month(s) period that ends the day before:
>   1) Your effective date of coverage; or
>   2) the effective date of a Change in Coverage.                    Benefit Management Services
>                                                                     Minneapolis Disability Claim Offi

35.     Hartford's October 8, 2021 denial set forth the Pre-existing Condition Limitation found in

the policy, but it did not include all policy language with regard to the limitation. The

5

denial letter omitted policy language which articulates an exception to the Pre-existing

Condition Limitation when the claimant had prior disability insurance coverage, or

"continuity":

**Continuity From A Prior Policy:** *Is there continuity of coverage from a Prior Policy?*
If You were:
1) insured under the Prior Policy; and
2) not eligible to receive benefits under the Prior Policy;
on the day before the Participating Employer Effective Date, the Deferred Effective Date provision will not apply.

*Is my coverage under The Policy subject to the Pre-existing Condition Limitation?*
If You become insured under The Policy on the Participating Employer Effective Date and were covered under the Prior Policy on the day before the Participating Employer Effective Date, the Pre-existing Conditions Limitation will end on the earliest of:
1) the Participating Employer Effective Date, if Your coverage for the Disability was not limited by a pre-existing condition restriction under the Prior Policy; or
2) the date the restriction would have ceased to apply had the Prior Policy remained in force, if Your coverage was limited by a pre-existing condition limitation under the Prior Policy.

36. In its denial, Hartford represented that there were only two exceptions to the Pre-existing

Condition Limitation and claimed neither one applied. It made no mention of the

continuity exception.

37. Immediately prior to beginning his employment with CMH, Brown was employed in a

similar position at St. Joseph Medical Center. Brown began his employment at St. Joseph

Medical Center in 2013 and had LTD coverage through Sun Life Assurance Company of

Canada throughout his employment.

38. Brown became disabled and unable to work in June 2020. Due to the length of his

employment with St. Joseph Medical Center and the Sun Life Policy's effective date, that

policy would not have a coverage limitation due to a Pre-existing Condition Limitation.

Under the Hartford policy, the Pre-existing Condition Limitation ended on the effective

date of August 1, 2013. Accordingly, when Brown's disability arose in 2020, the Pre-

existing Condition Limitation in the Hartford policy had already ended due to Brown's

continuity of prior coverage.

6

39.     Brown's issues arise from osteomyelitis, severe peripheral neuropathy, vascular

        insufficiency, high blood pressure, and diabetic retinopathy The Plan and Policy

        articulate the conditions under which a Plan Participant is entitled to LTD benefits.

40.     The language that defines "disability" from the policy is:

**Test of Disability** *(GR-9N 06-010 02-NJ)*
From the date that you first became disabled and until monthly benefits are payable for 24 months you meet the test of disability on any day that:

- You cannot perform the **material duties** of your **own occupation** solely because of an **illness**, **injury** or disabling pregnancy-related condition; and
- Your work earnings are 80% or less of your **adjusted predisability earnings**.

*After the first 24 months of your disability* that monthly benefits are payable, you meet the plan's test of disability on any day you are unable to work at any **reasonable occupation** solely because of an **illness**, **injury** or disabling pregnancy-related condition.

41.     "Material Duties" is defined as:

Duties that:

- Are normally needed for the performance of your **own occupation**; and
- Cannot be reasonably left out or changed. However, to be at work more than 40 hours per week is not a material duty.

42.     The Plan defines "Reasonable Occupation" as:

This is any gainful activity:

- For which you are, or may reasonably become, fitted by education, training, or experience; and
- Which results in, or can be expected to result in, an income of more than 60% of your **adjusted predisability earnings**.

43.     Brown, at all relevant times, met the terms of "disabled" under the any occupation

        standard of the policy.

44.     Brown is unable to perform the material duties of any occupation because of disability.

45.     Following his disability, Brown's work earnings were 80% or less of his adjusted

        predisability earnings.

46.     Brown is unable to perform the material duties of any occupation. He meets this standard

        and is eligible for benefits as he falls within the Plan's definition of "disabled".

47. Brown is also unable to work any reasonable occupation due to osteomyelitis, severe peripheral neuropathy, vascular insufficiency, high blood pressure, and diabetic retinopathy.

48. Brown, in combination with his physical impairments, is unable to work any reasonable occupation.

49. Brown, has at all relevant times, met the policies definition of "disability" under the Plan and is entitled to benefits.

50. Brown has exhausted his administrative remedies.

CAUSES OF ACTION

COUNT I
29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF
BENEFITS

51. Brown realleges the preceding paragraphs as if fully set forth herein.

52. Brown is entitled to all unpaid and accrued LTD benefits, as Hartford:

    a. Made an unfavorable decision without substantial evidence;

    b. Failed to properly consider Brown's medical impairments and resulting limitations; and

    c. Issued an unfavorable decision that was arbitrary and capricious.

53. Pursuant to 29 U.S.C. § 1132(a)(1)(b), Brown is entitled to an award of actual damages for losses suffered.

54. Pursuant to 29 U.S.C. § 1132(g), judgment may include compensation for a beneficiary's attorney's fees, costs, and prejudgment interest.

55. Hartford has not satisfied its obligation to pay Brown's LTD benefits.

56. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), Brown

prays for judgment against Hartford for unpaid LTD benefits, attorney's fees, costs, and

prejudgment interest.

## COUNT II
### 29 U.S.C. § 1132(a)(3) – BREACH OF FIDUCIARY DUTY

57. Brown realleges the preceding paragraphs as if fully set forth herein.

58. Under 29 U.S.C. § 1002(21)(A), a fiduciary is one who:

"exercises any discretionary authority or discretionary control respecting
management of such plan or exercises any authority or control respecting
management or disposition of its assets, (ii) he renders investment advice for a fee
or other compensation, direct or indirect, with respect to any moneys or other
property or such plan, or has any authority or responsibility to do so, or (iii) he
has any discretionary authority or discretionary responsibility in the
administration of such plan."

59. 29 U.S.C. § 1104(a)(1)(A) describes the fiduciary standard of care:

"a fiduciary shall discharge her duties with respect to a plan solely in the interest
of the participants and beneficiaries and – for the exclusive purpose of: (i)
providing benefits to participants and their beneficiaries; and (ii) defraying
reasonable expenses of administering the plan."

60. Hartford, the Plan's designated claims administrator, is a fiduciary.

61. Brown participated in and benefitted from the Plan as previously indicated.

62. Hartford's claims management practices are motivated by financial incentives in its

administrative services agreement with CMH.

63. As the payor of benefits and the entity responsible for exercising discretion in claims

administration, Hartford operates under an inherent conflict of interest.

64. A higher than marketplace quality standard, as set forth in *Metropolitan Life Ins. Co. v.*

*Glenn*, 554 U.S. 105, 128 (2008) governs the actions of a fiduciary.

65. Hartford breached its fiduciary duty in:

   a. Failing to comply with its internal guidelines and claims handling procedures. Its

9

claim handlers did not comply with documented instructions involving the

administration of disability claims, including its procedures involving coverage

and eligibility determinations;

b.  Asserting the Pre-existing Condition Limitation when it is inapplicable;

c.  Failing to properly administer the claim;

d.  Improperly shifting and changing its denial rationale;

e.  Engaging in a structural conflict of interest by assuming the role of both claims

administrator and payor of benefits;

f.  Failing to properly consider competent medical and vocational opinion evidence,

and/or failing to specifically explain why it did not agree with such evidence; and

g.  Failing to produce to Brown a full and complete copy of his claim file and/or any

other documents relevant to the denial of his claim;

66.  Hartford denied Brown's LTD benefits for the purpose of elevating its financial interests. In doing so, it breached its fiduciary duties.

67.  Hartford failed to discharge its duties solely in the interests of its participants and beneficiaries. It acted with both a conflict of interest and breached its fiduciary duty to both Brown and the Plan's participants and beneficiaries generally.

68.  Hartford's improper conduct demonstrates that ordinary relief under § 1132(a)(1)(B) is not an adequate remedy.

69.  Hartford's violations of regulations alone allow Brown the right to pursue any remedy under Section 502(a) of ERISA, including § 1132(a)(3). 29 C.F.R. § 2560.503-1(1)(2)(i).

70.  Hartford's violations of federal regulation also subject its decision to *de novo* review.

71.  WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(3), § 1109, and § 1132(a)(2), Brown

prays for an order that Hartford retrain its employees consistent with ERISA fiduciary

obligations and federal regulations; for reformation of its services agreement with the

plan administrator consistent with ERISA fiduciary obligations and federal regulations;

for an injunction preventing further unlawful acts by Hartford in its fiduciary capacity;

for an equitable accounting of benefits that Hartford has withheld; for the disgorgement

of profits enjoyed by Hartford in withholding benefits; for restitution under a theory of

surcharge; for the Court's imposition of a constructive trust; for an award of attorney

fees; and for further relief as the Court deems just.

Respectfully submitted,

**BURNETTDRISKILL, Attorneys**

By: /s/ Derrick A. Pearce
Derrick A. Pearce, Mo. # 42793
Kyle H. Sciolaro, Mo. #64568
Paul J. Taylor, Mo. #72159
103 W 26th Ave., Ste. 290
North Kansas City, MO  64116
P: 816.781.4836
F: 816.792.3634
dpearce@burnettdriskill.com
ksciolaro@burnettdriskill.com
ptaylor@burnettdriskill.com
ATTORNEYS FOR PLAINTIFF

11